UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAYLOR MARTIN,

    Plaintiff,

v.   Case No: 2:16-cv-537-FtM-99MRM

MIGUEL HUAPILLA, DAYTON GASTON, JOSEPH PEAKS, and MIKE SCOTT, as the Sheriff of Lee County,

    Defendants.

## OPINION AND ORDER

Plaintiff initiated this action on July 6, 2016 by filing a complaint against Defendants Dayton Gaston, Miguel Huapilla, Joseph Peaks, and Sheriff Mike Scott raising both civil rights and state law claims based upon injuries he received while incarcerated at the Lee County Jail (Doc. 1). The defendants filed a motion to dismiss the complaint (Doc. 15). Thereafter, Plaintiff filed the amended complaint before the Court (Doc. 18). The following are currently under consideration:

> Defendant Sheriff Mike Scott's Motion to Dismiss Count Five of Plaintiff's Amended Complaint (Doc. 20, filed August 24, 2016); and
>
> Plaintiff's Response in Opposition to Defendant Scott's Motion to Dismiss Count Five of Plaintiff's Amended Complaint (Doc. 22, filed September 7, 2016).

For the reasons set forth in this Order, Defendant Scott's Motion to Dismiss Count Five of the amended complaint is denied. Because Plaintiff filed an amended complaint, the defendants' motion to dismiss the original complaint (Doc. 15) is denied as moot. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

## I.   Pleadings

**a. Amended Complaint**

On or about September 12, 2014, Plaintiff was arrested and incarcerated in the Lee County Jail (Doc. 18 at ¶ 15). On September 24, 2014, Plaintiff was relocated from one portion of the jail to Dormitory 5 South (D5S), a specialized housing unit typically used to house inmates with known mental health issues. Id. at ¶ 20.  D5S contained approximately eight to ten nine-foot-square cells with glass walls and a glass door with a center food tray slot. Id. at ¶¶ 27-29.  Each cell faced a central observation desk. Id. at ¶ 30.

Defendants Gaston and Huapilla escorted Plaintiff to D5S, and Defendant Peaks was there when they arrived (Doc. 18 at 31-33). Plaintiff was ordered to change into a thin Velcro jumpsuit with nothing underneath—the typical uniform of a direct observation unit. Id. at ¶ 34.  Plaintiff observed another inmate ("Inmate Doe"), naked in one of the direct observation cells. Id. at ¶ 35.

Inmate Doe was agitated and defiant and did not comply with the orders of Defendant Peaks. Id. at ¶ 37.  Inmate Doe appeared to have orange residue on his body, and Plaintiff could smell pepper spray in the air. Id. at ¶ 39.  Plaintiff expressed concern about being placed into Inmate Doe's cell due to Doe's agitated and defiant state. Id. at ¶ 40.  However, Defendant Peaks told Plaintiff to be quiet and directed him into Doe's cell. Id. at ¶¶ 41-42.  At the time, Plaintiff had not been diagnosed with mental illness. Id. at ¶ 43.  Inmate Doe was six feet tall and weighed 250 pounds, whereas Plaintiff weighed only 130 pounds. Id. at ¶¶ 46-47.  There was at least one unoccupied cell in D5S. Id. at ¶ 48.

Plaintiff sat on a mattress on the floor of the cell, but within moments, Inmate Doe began taunting and challenging him to a fight (Doc. 18 at ¶¶ 50-51).  Plaintiff banged on the glass window to summon help, and Defendant Huapilla told Plaintiff to ignore Inmate Doe. Id. at ¶¶ 52-53.  Defendant Huapilla told Plaintiff that he and the other deputies would "handle it" if Inmate Doe continued. Id. at ¶ 53.  Inmate Doe persisted, and hit Plaintiff with his mattress. Id. at ¶ 55.  Plaintiff was again rebuffed by Defendant Huapilla. Id. at ¶¶ 55-56.

Inmate Doe continued to hit Plaintiff with his mattress, ramble incoherently, and challenged him to fight (Doc. 19 at ¶ 57).  Defendant Huapilla told Inmate Doe to Stop, but he continued

to harass and batter Plaintiff. Id. at ¶¶ 58-59. Defendant Huapilla then sprayed pepper spray into the cell at Inmate Doe while Plaintiff was still inside. Id. at ¶ 61. Instead of ceasing his aggressive conduct, Inmate Doe became enraged and began striking Plaintiff. Id. at ¶ 63-64. Defendant Huapilla then fogged the cell with pepper spray. Id. at ¶ 65.

Inmate Doe grabbed Plaintiff and placed him in a choke hold (Doc. 19 at ¶ 67). No defendant attempted to enter the cell to stop the attack. Id. at ¶ 68. Instead, Defendant Huapilla attempted to use a taser on Inmate Doe, firing through the food tray slot. Id. at ¶ 69. The taser caused Inmate Doe to increase his violence, and he began striking Plaintiff with closed fists. Id. Defendant Huapilla tried using the taser again. Id. at ¶ 70.

Thereafter, Plaintiff was able to escape Inmate Doe's grasp (Doc. 18 at ¶ 71). Defendant Huapilla then ordered Plaintiff to go to the cell door, place his hands behind his back, and put his hands through the food tray slot. Id. at ¶ 72. Plaintiff complied, and Defendant Huapilla handcuffed Plaintiff while he was still inside the cell with Inmate Doe; however, Defendant Huapilla did not open the cell door to remove Plaintiff from the cell. Id. at ¶ 74. At that point, Inmate Doe lunged at Plaintiff who was still handcuffed. Id. at ¶ 77. Inmate Doe grabbed Plaintiff's testicles and began forcefully pulling and tearing Plaintiff's scrotum. Id. at ¶ 78. Plaintiff could not protect himself. Id. at ¶ 79.

No defendant or any other corrections officer made an effort to enter the cell (Doc. 18 at ¶ 80). Instead Defendant Huapilla attempted to use pepper spray again. Id. When that was unsuccessful, Defendant again Huapilla tried to use his taser against Inmate Doe. Id. at ¶ 82. When that did not work, deputies entered the cell to restrain Inmate Doe. Id. at ¶ 83. However, by that time, Inmate Doe had ripped Plaintiff's testicles from his scrotal sac. Id. Plaintiff required emergency surgery to repair his scrotum. Id. at 84-85.

In Count Five of the amended complaint, Plaintiff asserts that Defendant Scott was aware that "effective training necessarily required, among other things, a component specifically geared at properly educating corrections officers on crisis intervention and de-escalation techniques during confrontations with inmates with mental illness or disorder." (Doc. 18 at ¶ 129). Plaintiff also asserts that Defendant Scott made a decision, prior to the subject incident, to train employees of the Lee County Sheriff's Office (LCSO) how to handle inmates in specialized housing units. Id. at ¶ 131. He alleges that Defendant Scott was generally negligent for failing to properly implement such training. Id. at ¶¶ 132-140.

**b.  Motion to Dismiss and Response in Opposition**

Defendant Scott moves to dismiss Count Five of the amended complaint (Doc. 20). Specifically, he claims that Count Five is

based upon his alleged negligence in failing to properly train the defendant deputies and that "how or whether [he] trains his deputies . . . is a planning level decision that is protected from judicial scrutiny by sovereign immunity." Id. at 6.  Plaintiff argues that Defendant Scott is not entitled to immunity because Count Five is based "upon Scott's failure to properly *implement* already existing policies, which constitutes an *operational-level* function[.]" (Doc. 22 at 2) (emphasis in original).

## II.  Standard of Review for Motions to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Bell Atlantic Corp. v. Twombly, illustrated a two-pronged approach to motions to dismiss. First, a reviewing court must determine whether a Plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 679.

### III. Analysis

In Claim Five of the amended complaint, Plaintiff asserts that Defendant Scott is liable for Inmate Doe's attack because the attack was a probable and foreseeable consequence of Defendant Scott's negligent failure to implement training directed at ensuring that the deputies at the Lee County Jail knew how to handle inmates with mental illness or behavioral problems (Doc. 19 at ¶¶ 130-32). Plaintiff specifically states that Defendant Scott made a decision to implement such training "prior to and/or during the course of [the deputy defendants'] employment and, certainly, at times sufficiently in advance of the subject incident." Id. at 131. Plaintiff argues that, "by affirmatively undertaking the

duty to train, [Defendant Scott] owed a duty to officers and inmates, including [Plaintiff], to exercise reasonable care in the training which was provided so as to avoid unnecessary risk of harm." Id. at ¶ 133.

Defendant Scott argues that Claim Five must be dismissed because a government entity's decision on how to train its officers and the subject matter to include in the training is a discretionary function which is exempt from tort liability (Doc. 20 at 8). Defendant Scott notes that Plaintiff appears to allege that he should have trained his deputies differently, or should have included specific topics in the training regime, and that "[t]he decision on whether or not to train his deputies on a certain subject or how to train his deputies [on certain topics], is a discretionary function of the Sheriff." Id. at 10.

Generally, the State of Florida and its subsidiaries are immune from tort liability. See Fla. Const. Art. X, § 13. However, Florida has waived this immunity "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." Fla. Stat. § 768.28(1). Nevertheless, even if a claim would subject a private person to liability, the waiver of sovereign immunity still applies if the challenged acts of the state agent were "discretionary" government acts rather than

"operational" ones. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001).

A discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Henderson v. Bowden, 737 So.2d 532, 538 (Fla. 1999) (citation and internal quotation marks omitted). An act is "discretionary" when all of the following conditions are met:

> (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

Lewis, 260 F.3d at 1264 (citations omitted) (alterations in original).[1] On the other hand, an "operational" function is one

---

[1] In Lewis, the Eleventh Circuit affirmed the district court's dismissal of a negligent training claim because it challenged "discretionary" governmental functions immune from tort liability. 260 F.3d at 1266. The Eleventh Circuit explained:

> Lewis does not challenge the implementation or operation of the City's police training program as it relates to the officers involved in the shooting, but rather Lewis challenges the City's policy decisions regarding what to include in the training of its police officers. A city's decision regarding how to

"not necessary to or inherent in policy or planning[ ] that merely reflects a secondary decision as to how those policies or plans will be implemented." Id.  Therefore, for Plaintiff to state a claim for negligent training, he must show that Defendant Scott was negligent in the implementation or operation of a training program *already in effect*. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) ("For Mercado to state a claim for negligent training, he must show that Orlando was negligent in the implementation or operation of the training program.").

Here Plaintiff argues that "[i]mplementing the particularized training which [Defendant Scott] had previously undertaken to provide, and exercising reasonable care in the provision of that training, are operational-level functions for which [Defendant Scott] is not immune and is subject to liability." (Doc. 18 at 134).  Accordingly, Plaintiff contends that Defendant Scott was negligent in the implementation or operation of a training program already in effect.  Thus, to the extent Plaintiff's claim regards the implementation of an existing training program, sovereign

---

train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning.

Id.  Therefore, because Lewis challenged the reasonableness of basic policy decisions made by the City, the "discretionary" function exception to the waiver of sovereign immunity applied and barred his claim. Id. at 1266-67.

immunity does not bar the claim, and it is not subject to dismissal.[2] Therefore, Defendant Scott's motion to dismiss is denied.

Accordingly, it is now **ORDERED:**

1. Defendant Scott's Motion to Dismiss Count V of Plaintiff's Amended Complaint (Doc. 20) is **DENIED**.

2. Because Plaintiff filed an amended complaint, the Defendants' motion to dismiss Plaintiff's complaint (Doc. 15) is **DENIED** as moot.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___10th___ day of January, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Counsel of Record

---

[2] Plaintiff asserts that he challenges only the operation of an *existing* training program (Doc. 22). Defendant Scott suggests that Plaintiff actually alleges that he should have trained his deputies differently or included different topics in his training regimen (Doc. 20 at 9). At this stage of litigation, the Court accepts as true the factual assertions made in a complaint. See Neitzke v. Williams, 490 U.S. 319, 327 (1989). However, to the extent Plaintiff uses the terms "operate" or "implement" as synonyms for "establish," Defendant Scott would be entitled to sovereign immunity on the failure to train claim as a matter of law. Accordingly, the denial of Defendant Scott's motion to dismiss is without prejudice to Defendant Scott re-raising the instant sovereign immunity argument at trial or in a motion for summary judgment.